MINNEAPOLIS THRESHING MACHINE COMPANY v. W. O. GILRUTH and Others.[1]

July 30, 1909.

Nos. 16,148—(53).

**Purchaser of Note Put on Inquiry — Evidence.**

Possession by the payee of a promissory note indorsed to a third party may constitute prima facie evidence of title in the payee, in the absence of circumstances reasonably tending to show otherwise; but where the name of the indorsee has been erased, and the evidence is conclusive that the

[1]Reported in 122 N. W. 466.

erasure was a forgery, and the claim of ownership by the payee is open to question, then it is the duty of prospective purchasers to make reasonable inquiry concerning the title.

*Held*, under the evidence and offer of proof, it conclusively appears that appellant was the owner of the notes in suit, and was entitled to recover.

Action against W. O. Gilruth, C. M. Anderson, John McKenzie, the Lincoln County State Bank and the First National Bank of Lake Benton, in the district court for Lincoln county to recover $497.70 for the conversion of two promissory notes indorsed by the payees, Anderson & Swenson, to the plaintiff. In their separate answer defendants McKenzie and the First National Bank of Lake Benton alleged a sale of the notes to that bank by the payees. At the time of the trial the words of the original indorsements: "Pay to the order of the Minneapolis T. M. Co." had been crossed out with red ink. The case was tried before Olsen, J., who directed a verdict in favor of plaintiff for $611.93. From an order setting aside the verdict and granting a new trial as to defendant the First National Bank of Lake Benton, plaintiff appealed. Reversed and remanded with direction to reinstate the verdict.

*J. N. Johnson* and *V. B. Seward,* for appellant.
*Fish & McKenzie,* for respondents.

LEWIS, J.

Anderson & Swenson who were appellant's agents for the sale of machinery in Lincoln county, became indebted to appellant, and indorsed and delivered to appellant two certain promissory notes, one for $300 and the other for $150, which were executed by certain farmers in that locality to Anderson & Swenson. At the time of the delivery of the notes to appellant's agent, they were indorsed as follows:

"Pay to the order of the Minneapolis T. M. Company.

Anderson & Swenson,

by C. M. Anderson."

After the notes had been so indorsed and delivered, Mr. Hickey, appellant's agent, gave them to Anderson for the purpose of securing the cash on them from the Ivanhoe National Bank and to send a

draft for the amount to the company. Anderson testified that he took the notes to the bank and told Mr. Gilruth, the cashier, that Hickey wanted the cash for the notes, and that Gilruth asked him to leave them there until he could see what could be done. According to Anderson's testimony the indorsement remained on the back of the notes just as executed by him at the time he delivered them to the company. Gilruth, on the other hand, testified that at the time the notes were delivered to him the words "Pay to the order of the Minneapolis T. M. Company" were crossed out in red ink, and he claimed that Anderson presented the notes as his own, and that, noticing the erasure in red ink, he asked Anderson about it, to which he replied that the machine company had proposed to take these notes, but later on had made some kind of a settlement and turned the notes over to him, and that there would be no misunderstanding as to the notes being his (Anderson's) own property. The notes were delivered to Gilruth about August 2, 1902, and were retained in his possession until August, 1903.

At that time the First National Bank of Lake Benton, claiming to own the notes, called on Gilruth and demanded them, whereupon he delivered them to the cashier of the Lake Benton bank, which bank retained them and collected the proceeds. This action was brought against the Lake Benton bank by the machine company to recover the amount of the proceeds. A verdict was returned for appellant for the full amount of the notes and interest, but upon motion the court ordered a new trial upon the ground that the court erred in ruling out an offer of certain evidence.

The offer was in the following words: "The defendant The First National Bank of Lake Benton, Minnesota, offers to prove that on August 13, 1903, the defendant C. M. Anderson represented and told Charles E. Lavesson, its cashier, that he was the owner of the notes in question in this action, and then asked said Lavesson to take said notes and give him credit on his indebtedness to said bank; that said Anderson was then indebted to said bank in the sum of $1,881.09; and that Lavesson promised to see W. O. Gilruth and talk the matter over with him, and if he thought it all right that said First National Bank would take said notes and give him said credit;

that said Lavesson saw said Gilruth and the next day thereafter, and on August 14th took said notes in question and gave said Anderson credit on his said indebtedness for the amount of said notes, $472.55; that said bank then believed said notes belonged to said Anderson, and so took the same from said Anderson in good faith, relying on the statement of said Anderson that he was the owner of the same."

It was conclusively established at the trial that the notes were turned over to appellant company in settlement of an indebtedness owing by Anderson & Swenson, and that Hickey, the agent of the company, gave the notes back to Anderson, without any erasure of the indorsement, for the purpose of presenting them to the bank to get the cash and send it to the company. There was a controversy, however, between Anderson and the cashier of the Ivanhoe National Bank as to whether the name of the company was erased from the indorsement at the time the notes were delivered to the cashier, and whether Anderson represented that the notes were his, and not the company's.

For the purpose of this appeal we assume the following facts to have been conclusively established by the evidence: That the notes were the property of the company, and that Anderson was constituted its agent for the purpose of receiving and remitting the cash therefor. We will also assume that for his own purpose Anderson erased the name of the company from the indorsement and represented to Gilruth that the notes were originally turned over to the company in settlement, but that he had made another settlement with appellant, received back the notes, and that they were his personal property. It will also be conceded that the facts stated in the offer of evidence were true, viz.: That Anderson told the cashier of the Lake Benton bank that he was the owner of the notes and asked him to give him credit on his personal indebtedness for the amount thereof; that the cashier promised to see Gilruth and talk the matter over with him, and if he thought it all right then the Lake Benton bank would take the notes and give him credit; that the cashier saw Gilruth and took the notes, gave credit for them, and believed they belonged to Anderson.

In our opinion the offer was incomplete, and in itself not sufficient to justify the Lake Benton bank in receiving the notes as the property of Anderson without making any inquiry as to the rights of appellant. The condition of the indorsement on the back of the notes was sufficient to challenge the attention of the bank and require its officers to make reasonable inquiry as to the ownership thereof. The offer concedes that the cashier considered the question of title as being doubtful, and reserved the right to make inquiry concerning the same from the then holder of the notes, Gilruth, the cashier of the other bank. The offer does not disclose the information secured from Gilruth. According to Gilruth's own testimony, his suspicion had been aroused as to the title of the notes, and he professed to accept Anderson's explanation that the notes had belonged to appellant, but had been taken back, and no controversy would arise as to the ownership. The Lake Benton bank was charged with full knowledge of these facts, and stood in no better position than did Gilruth as to the title of the notes. So far as the evidence stands, the erasure of appellant's name was a forgery, and did not have the effect of changing title to the notes, and the Lake Benton bank cannot excuse its neglect to inquire into the origin of the title by the mere fact that Anderson claimed to be the owner of the notes; he not having possession of them.

For some purposes, possession by the payee of a note indorsed specially by him to a third person is prima facie evidence that such payee is the owner of the note. Kells v. Northwestern Live-Stock Ins. Co., 64 Minn. 390, 67 N. W. 215, 71 N. W. 5, 58 Am. St. 541. But that rule has no application to a case where the indorsement has been erased under circumstances which throw discredit upon the claim of title by the payee. We consider the facts available to the Lake Benton bank sufficient to overcome the evidence of title which might be inferred from the claim of ownership by Anderson.

The evidence offered was incomplete, and if it had been accepted, and established by positive proof, would not have been sufficient to justify the jury in finding that Anderson was the owner of the notes, or that the bank was an innocent purchaser without notice.

Reversed and remanded, with direction to the trial court to reinstate the verdict.